Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7778 | **DATE** | 6/22/2001 |
| **CASE TITLE** | Gaffrig Performance Industries, Inc vs. Livorsi Marine, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant Livorsi Marine, Inc.'s Motion for Summary Judgment (doc. #15)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant Livorsi Marine Inc.'s Motion for Summary Judgment (doc. #15) is **DENIED**. Joint pretrial order submission set for July 31, 2001 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials: JHC

date docketed: JUN 25 2001
docketing deputy initials: CM
Document Number: 28

FILED FOR DOCKETING
01 JUN 22 PM 6:32

DOCKETED
JUN 2 5 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GAFFRIG PERFORMANCE INDUS., INC. | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO. 99C7778 |
| v. | ) | |
| | ) | JUDGE WILLIAM J. HIBBLER |
| LIVORSI MARINE, INC. | ) | |
| Defendant. | ) | |

## MEMORANDUM AND OPINION

Gaffrig Performance Industries, Inc. ("Plaintiff") filed suit against Defendant, Livorsi Marine, Inc. ("Livorsi"), for trademark infringement pursuant to 35 U.S.C. § 1114, false designation of origin pursuant to 15 U.S.C. § 1125(a), and deceptive trade practices and consumer fraud pursuant to 815 ILCS 505/1 et seq. Similarly, Livorsi filed an answer and counterclaim against Plaintiff alleging the same causes of action. This Court has before it, Livorsi's (as counter-plaintiff) Motion for Summary Judgment (doc. #15). For all the reasons stated below, Livorsi's Motion for Summary Judgment (doc. # 15) is **DENIED**.

## FACTS

Gaffrig Precision Instruments was incorporated on July 24, 1984 by James W. Gaffrig. In 1984, Mr. Gaffrig began the business of selling marine products. In 1988, Gaffrig Precision Instruments entered into an Asset Purchase Agreement ("Agreement") with Michael Livorsi, Defendant's founder, in which Mr. Livorsi acquired the right to the use of the Gaffrig Precision Instruments trademark on speedometers. Shortly thereafter, Mr. Livorsi formed the defendant corporation, Livorsi Marine, Inc. ('Livorsi"), and began using the "Gaffrig Precision Instruments" trademark on marine gauges. Livorsi has used the "Gaffrig Precision Instruments" and "Gaffrig" marks (collectively "Gaffrig marks") continuously since 1988.

1



On December 2, 1991, Gaffrig Precision Instruments was involuntary dissolved. Approximately three weeks prior to the dissolution, however, James Gaffrig formed a new corporation that would operate as Gaffrig Performance Industries, Inc. Since 1991, Plaintiff has been using "Gaffrig Performance Industries" as a tradename and designation of origin for marine products by using the tradename in advertising, promotions, and by affixing the mark directly to its products.

Meanwhile, Livorsi had widely used its Gaffrig trademarks during the period from 1988 to 1992 and filed an application to register the Gaffrig trademarks on March 9, 1992. The U.S. Patent and Trademark Office ("PTO") issued Livorsi a trademark registration for the Gaffrig trademarks on November 2, 1993. On January 6, 2000, the Patent and Trademark Office declared Livorsi's "Gaffrig" trademark registration incontestable pursuant to sections 8 and 15 of the Lanham Act (15 U.S.C. §§ 1058 and 1065).

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "Summary judgment is appropriately entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 479 (7th Cir. 1996).

The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's

favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Supreme Court has instructed that the facts which are considered material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Id.* During its summary judgment analysis, this Court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).

In this case, should Livorsi establish a prima facie case of infringement, Plaintiff then carries the burden of presenting evidence to support its affirmative defenses. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 (1994). Summary judgment may be an appropriate remedy in a trademark infringement suit where the plaintiff fails to show that there are material questions of fact with respect to its affirmative defenses. *Blue Ribbon Feed Co. v. Farmer's Union Central Exchange, Inc.*, 731 F.2d 415 (7th Cir. 1984). Applying the above standard, this Court now addresses Livorsi's motion.

## TRADEMARK INFRINGEMENT STANDARD

### A. Ownership of a Protectable Mark

Plaintiff began using the "Gaffrig"and "Gaffrig Precision Instruments" marks to identify its products in 1984. Plaintiff claims that it has been using these marks continuously from 1984 to present. In 1988, Plaintiff and Livorsi entered into the Agreement, under which Livorsi claims it acquired the rights to the "Gaffrig Precision Instruments" mark on marine gauges. Livorsi has used the ""Gaffrig" and "Gaffrig Precision Instruments" marks on a continuous basis

3

since 1988. Livorsi obtained federal registration for the "Gaffrig Precision Instruments" mark on marine gauges in 1993.

Section 43(a) of the Lanham Act, which prohibits the use of false descriptions, representations, or designations of origin, has been construed to protect against trademark, service mark, and trade name infringement even though the mark or name has not been federally registered. 15 U.S.C. § 1125(a); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986). To prove a Lanham Act violation of trademark infringement Livorsi must demonstrate that (1) it owns a valid and legally protectable mark; and (2) Plaintiff's use of the mark to identify goods or services causes a likelihood of confusion. 15 U.S.C. §§ 1114, 1125(a); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997); *Chattanoga Manufacturing, Inc. v. Nike, Inc.*, No. 99 C 7043, 2001 WL 422607 (N.D. Ill. March 16, 2001). The first of these elements, whether the mark is valid and protectable, is proved when the mark has become incontestable under the Lanham Act. 15 U.S.C. §§1058, 1065. However, an incontestable mark may be cancelled at any time if it was obtained fraudulently or contrary to the provisions of 15 U.S.C. §§ 1052(a)-(c), 1054.

In this case, although Livorsi has been using the "Gaffrig" mark on a continuous basis for over five years, rendering it incontestable, Plaintiff has alleged fraud in the application of the trademark. Plaintiff claims that although Mr. Livorsi knew that the Asset Purchase Agreement only entitled him to use the "Gaffrig" mark on speedometers, his application to the Patent and Trademark Office extended beyond speedometers. Plaintiff also claims that not only did Livorsi extend the scope of the Agreement beyond speedometers to marine instruments and controls, but it also misled the Patent and Trademark Office as to the point in time which the "Gaffrig" mark was first used. This Court will address Livorsi's claims of incontestability and Plaintiff's claims

4

of fraud, in turn. Ultimately, however, Livorsi's motion for summary judgment must be **DENIED**.

### B. Likelihood of Confusion

Beginning in 1984, Gaffrig Precision Instruments was formed and began using the "Gaffrig" marks. In 1988, Livorsi began using the "Gaffrig Precision Instruments" mark on a wide variety of marine gauges, mechanical indicators, and mechanical controls. In 1991, Plaintiff began using the "Gaffrig Performance Industries" mark on its marine products. Livorsi asserts that consumers of marine products are confused about the origin of the parties' products as a result of Plaintiff's use of the "Gaffrig Performance Industries" and "Gaffrig" mark.

"The determination of a likelihood of confusion is a finding of fact, and as such, 'a motion for summary judgment in trademark infringement cases must be approached with great caution.'" *Chattanoga*, 2001 WL 422607 (quoting *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 616 (7th Cir. 1993)). The Seventh Circuit has identified seven factors to be considered in a court's likelihood of confusion analysis, "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and , (7) intent of defendant 'to palm-off' his product as that of another.'" *AHP*, 1 F.3d at 615. This list of factors is not exhaustive, nor is any one factor alone dispositive of the analysis. *Id.* at 616.

> [T]he plaintiff need not prove each and every factor in order to prevail. However, the converse is also true; neither is it required that the defendant refute each and every factor. The weight and totality of the most important factors in each case will ultimately be determinative of the likelihood of confusion, not whether the majority of the factors tilt the scale in favor of one side or the other.

*Id.* (quoting *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1187 (7th Cir. 1989)).

5

Livorsi argues that Plaintiff's use of "Gaffrig Performance Industries" is confusingly similar to its use of "Gaffrig Precision Instruments". Plaintiff counters that any confusion is the result of Livorsi's fraudulent application and registration of the "Gaffrig" mark. Plaintiff claims that Livorsi was well aware of the fact that the "Gaffrig" mark was in use at the time of the application and therefore, Livorsi's claims of likelihood of confusion are the direct result of the fraudulent registration. Because this Court finds a genuine issue of material fact exists with regard to Plaintiff's allegations of fraud, summary judgment must be **DENIED.**

ANALYSIS

A. Fraudulent Registration

Livorsi claims that Plaintiff cannot maintain its claims of fraudulent registration because it failed to plead its allegations of fraud with particularity in its complaint. Furthermore, Livorsi argues that even if the complaint sufficiently alleges a claim of fraud, Livorsi's conduct did not constitute fraud. As support for its assertion, Livorsi claims that it fulfilled the requirements of § 1 of the Lanham Act, and therefore, Plaintiff's claims must fail and summary judgment must be granted in its favor.

1. Plaintiff has pled allegations of fraud with particularity

As a preliminary matter, this Court must first determine whether Plaintiff has properly pled fraud in the application pursuant to Rules 8 and 9(b) of Federal Civil Procedure. Livorsi alleges that because Plaintiff has failed to plead its allegation of fraud with any particularity, it must abandon its claim of fraudulent registration. Plaintiff counters that it has met the particularity requirements in Rule 9, in that it sketches out the nature and substance of Livorsi's false representations.

It is well-established that Plaintiff must state any misrepresentations or allegations of fraud with particularity. Fed. R. Civ. P 9(b); *Appraisers Coalition v. Appraisal Institute*, 845 F. Supp. 592, 608-09 (N.D. Ill. 1994). However, Rule 9(b) must be read in conjunction with Rule 8 which only requires a short and plain statement of the claim. *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir.1975); *Schlueter v. Cozad*, 674 F. Supp. 1351, 1353 (C.D. Ill.1987) ("The particularity requirement of Rule 9(b) does not ... render the general principles of Rule 8 inapplicable to pleadings alleging fraud."). Rule 9(b) does not require fact pleading, it merely requires pleading circumstances. *Schlueter*, 674 F. Supp. at 1351.

In cases of fraudulent registration of a patent, as is the case with all allegations of fraud, Plaintiff must satisfy the pleading requirements of Rule 9(b) and plead the circumstances of the fraud with particularity. Fed. R. Civ. P. 9(b). Contrary to Defendant's claims, Plaintiff need not set forth all of the specific facts and circumstances surrounding Defendant's alleged fraud, but merely sketch the fraudulent scheme. *Towers Financial Corp. v. Solomon*, 126 F.R.D. 531, 535-36 (N.D. Ill. 1989). The specificity requirements of Rule 9(b) are designed to ensure that defendants are provided enough information to adequately formulate responsive pleadings, and must be read in conjunction with Rule 8, which requires only a "short and plain statement" of the claim. *Id.* at 535. While fraud must be proven with clear and convincing evidence, claims of fraud on the PTO are far easier to plead than prove; and Plaintiff has successfully plead fraudulent procurement of a federal trademark registration. *Thomas Indus. v. L.E. Mason Co.*, No. 90 C 4099, 1991 WL 83821, at *3 n.5 (N.D. Ill. May 10, 1991).

Plaintiff's Complaint alleges that Livorsi obtained the trademark registration "through deliberate deceit and misrepresentation, with full knowledge of the falsity thereof, all to the Plaintiff's direct and substantial detriment." (Pl.'s Compl. at ¶ 13). This single sentence of the

7

Complaint establishes three of the five requisite factors of application fraud (misrepresentation, scienter, damages). Additionally, the Livorsi is well aware of when, where, how, why, and who allegedly made the misrepresentations, because they center on the application for trademark registration. By no stretch of the imagination is the fraud so vaguely alleged that the Defendant is unable to formulate effective responsive pleadings. Moreover, as the pleading progressed, Plaintiff has fully developed its fraud allegations and supplied a solid factual basis tending to support those allegations.

In this case, Plaintiff's allegations provide Livorsi with "'a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants,'" which is all that Rule 9(b) requires. *Koulouris v. Estate of Chalmers*, 790 F. Supp. 1372, 1374-75 (N.D. Ill.1992) (quoting Tomera, 511 F.2d at 509). Therefore, this Court finds that Plaintiff has met the requisite pleading requirements of Rule 9(b).

### 2. A genuine issue of fact exists as to fraudulent registration

Livorsi asserts that because it complied with 15 U.S.C. § 1051, it did not commit fraud in the registration of the trademark. Livorsi asserts that it has continually used the "Gaffrig" and "Gaffrig Precision Instruments" marks since 1988. Livorsi further alleges that Plaintiff's only means of avoiding a finding of trademark infringement is to assert one of the nine available affirmative defenses found in 15 U.S.C. § 1115(b). Plaintiff responds to Livorsi's argument by alleging fraudulent registration pursuant to § 1115(b)(1). Plaintiff counters that because Livorsi made knowingly misleading statements in the application of the trademark, it committed fraud in the registration and therefore, Livorsi's motion for summary judgment should be denied.

Section One of the Lanham Act requires registrants to make a verified statement that they are unaware of superior rights to the mark for which they seek registration. 15 U.S.C. §§

1051(a)(1)(A), (b)(1)(A). Specifically, § 1 demands that registrants submit a written application which is verified by the applicant. 15 U.S.C. § 1051 (a)(1). That application must specify the date of the applicant's first use of the mark; the date of the applicant's first use of the mark in commerce; the goods in connection with which the mark is used; and the manner in which the mark is used in connection with those goods. *Id.* Furthermore, the application must include a statement from the applicant verifying his belief that he is the owner of the mark and that no other person or entity has the right to use the mark in commerce. *Id.*

To establish that Livorsi committed fraud in the procurement of the federal registration, Plaintiff must plead and prove "(1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from the reliance." *Thomas Industries, Inc. v. L.E. Mason Co.*, No 90 C 4099, 1991 WL 83821, at *2 (N.D. Ill. May 12, 1991) (citing *San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 473 (10th Cir. 1988)).

Livorsi claims that its knowledge of Plaintiff's use of the "Gaffrig" marks is legally insufficient to establish fraud. To support this assertion, Livorsi relies on the premise that all that is required of it is proof of a false representation of a material fact, knowledge of the falsity, and an intent to induce action as a result. *Zip Dee Inc. v. Dometic Corp.*, 900 F. Supp. 1004, 1009 (N.D. Ill. 1995). Plaintiff counters that it has proven that Livorsi made knowingly inaccurate statements when it applied for the "Gaffrig" marks and therefore, a genuine issue of fact exists as to whether Livorsi fraudulently registered the marks.

9

First, Plaintiff argues that Livorsi made knowingly inaccurate statements in its trademark application. Plaintiff alleges that Livorsi made knowingly inaccurate statements as to the ownership of the "Gaffrig" marks. Plaintiff points to the Agreement as support for its assertion. Specifically, Plaintiff claims that the Asset Purchase Agreement encompassed only the speedometer line of Gaffrig Precision Instruments. Plaintiff claims that the Agreement is clear on its face that Livorsi acquired the right to use the "Gaffrig" marks in connection with speedometers only. However, Livorsi's trademark application included not only speedometers, but all marine instruments and controls. Plaintiff claims that Livorsi mislead the Patent and Trademark Office into believing that it was the owner of the "Gaffrig" marks for uses beyond speedometers. This Court has carefully read the Agreement and finds that Livorsi only acquired the rights to the speedometer branch of Gaffrig's business.[1] It is clear that Livorsi applied for registration of the "Gaffrig" marks on instruments, gauges, controls, indicators, compasses, tools and the like, as well as, fittings, mounts, assemblies, tubes, hoses, sending and sensing units, and all related items and parts. (Def.'s Ex. L at LMI000295.) It is also clear that Livorsi informed the Patent and Trademark Office that the "Gaffrig" marks' only significance in the trade was to identify Livorsi's line of marine instruments. This Court cannot reconcile the fact that Livorsi only acquired the rights to the "Gaffrig" mark in reference to speedometers yet applied for a "Gaffrig" trademark registration on all marine gauges, controls, instruments, and the like. In

---

[1] "Livorsi shall mean, for the purpose of this Agreement, and apply to any corporation to be formed to sell the speedometer line of business of which Livoris [sic] is a shareholder." (Pl.'s Ex. A., Asset Purchase Agreement, at LMI000214.) "Livorsi desires to purchase from GPI, and GPI desires to sell to Livorsi, the assets of GPI's Speedo [Speedometer] Business." *Id.* "Livorsi shall have the right to use the GPI trade name in connection with the manufacture and sale of speedometers and in advertising." *Id.* at ¶1. "GPI shall use all reasonable efforts and cooperate with Livorsi...to effectuate a transfer to Livorsi of GPI's customers for GPI's Speedo [Speedometer] Business." *Id.* at ¶4. "Livorsi acknowledges and agrees that [Gaffrig's agreement to restrain from engage in the speedometer business for a period of two years] shall not restrict or prohibit GPI or Gaffrig from (i) [sic] the manufacture or sale of any other products." *Id.* at ¶9(b).

10

light of the facts before it, this Court finds that Plaintiff has stated a genuine issue of fact exists as to Livorsi's fraudulent registration as it pertained to the scope of the ownership of the "Gaffrig" marks.

Next, Plaintiff argues that Livorsi has failed to comply with the Agreement's payment terms and to allow Livorsi to claim ownership of the "Gaffrig" mark would result in unjust enrichment. Livorsi has failed to respond to this argument and therefore, Plaintiff has raised a genuine issue of fact as to whether Livorsi performed under the Agreement.

Because Plaintiff has raised genuine issues of material fact as to whether Livorsi fraudulently applied for its trademark registration and whether it performed under the Agreement, Livorsi's Motion for Summary Judgment on the issue of fraudulent registration is **DENIED**.

### B. Incontestable Trademark

Livorsi's next argument is that Plaintiff cannot challenge the validity of the incontestable trademark on the basis of Plaintiff's prior use. Livorsi supports its claim by stating that Plaintiff cannot claim its priority in mark absent a showing that it acquired rights to the mark from Gaffrig Precision Instruments. Furthermore, Livorsi claims that Plaintiff cannot tack on its use of the "Gaffrig" marks unless it demonstrates that "Gaffrig Precision Instruments" and "Gaffrig Performance Industries" create the same continuing commercial impression. Plaintiff counters that Livorsi's fraudulent registration cancels its incontestable trademark.

The Lanham Act permits the registration and enforcement of trademarks. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 502 (7th Cir. 1992). The registration of a mark is prima facie evidence of an exclusive right to use the mark for those goods and services for which the mark is registered. 15 U.S.C. § 1115. A trademark registration may ripen to incontestability if the

11

registrant has used the mark in commerce for a five-year period following the registration on or in connection with the goods specified in the registration. 15 U.S.C. § 1065. Here, the burden is on Defendant, as the moving party, to prove a registered trademark existed, that Plaintiff used the trademark in commerce without Defendant's consent, and that there was a likelihood of confusion as a result of Plaintiff's use of the mark. *Dunkin' Donuts, Inc. v. Towns Family, Inc.*, No. 95 C 3666, 1996 WL 328018, at *3 (N.D. Ill. June 11, 1996). The alleged infringing party may affirmatively defend the trademark infringement allegation by proving any of the defenses or defects provided in 15 U.S.C. § 1115. *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 202 (1985) ("A mark may be cancelled at any time for certain specified grounds, including that it was obtained fraudulently or has become generic."). One such defense within § 1115 is fraud in the registration application for a federal trademark another is priority in use.

1. Livorsi's incontestable trademark may be challenged

Livorsi asserts that Plaintiff cannot claim a priority in mark claim absent a showing that it legally obtained rights in the "Gaffrig" marks. Livorsi claims that Gaffrig Precision Instruments and Gaffrig Performance Industries are two wholly independent corporate entities and therefore, Plaintiff does not have a valid prior use claim. Plaintiff counters that Livorsi made knowingly inaccurate statements regarding the first use of the "Gaffrig" marks, that those inaccurate statements have led to a likelihood of confusion in the marketplace, and that Plaintiff has been damaged as a result. Because a genuine issue of fact exists as to whether or not the incontestable trademark can be challenged, summary judgment must be **DENIED**.

Five years after registering a mark, the holder may file the affidavit required by § 1065 and have its marked declared "incontestable." 15 U.S.C. § 1065(3). Once a mark has become incontestable, its validity is presumed, subject to certain enumerated defenses set out in 15

12

U.S.C. § 1115(b).[2] *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189 (1985); *Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 327 (11th Cir.1989). An incontestable mark is subject to challenge only under limited circumstances including the prior use defense of § 1065. "[T]he Lanham Act creates a narrow exception to the conclusive presumption of a registrant's right to use its incontestable mark. The prior innocent use exception applies when the mark has been used by a party or those in privity with it since a date prior to registration of the mark." *Park N' Fly, Inc. v. Dollar Park N, Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) (citing 15 U.S.C. §1115(b)(5)). What is relevant for this Court's analysis is the fact that even if a junior user's mark has attained incontestable status, such status does not cut off the rights of a senior user. *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1395 (3d Cir. 1985) ("[A] federal registrant is still subject to the defense of a prior use of the mark who has established a market in specific areas notwithstanding that senior user's failure to register."); *see also Tonawanda*, 842 F.2d at 646 ("[T]he plain meaning of the § 1065 exception is that if a party has acquired common-law rights continuing since before the publication of the federal registration, then to that extent the registration will not be incontestable.") (citations omitted).

In this case, Livorsi claims that because Gaffrig Performance Industries and Gaffrig Precision Instruments were not related companies, Plaintiff cannot claim any right in the mark

---

2 The defenses to an incontestable mark are: (1) "obtained fraudulently;" (2) "abandoned;" (3) allow others to use the mark "... so as to misrepresent the source of the goods or services ..."; (4) non-trademark use, "used fairly" and in "good faith"–"only to describe the goods or services of such party;" (5) lack of knowledge of registrant's prior use ; (6) prior use of non-registered users marks; (7) used to violate antitrust laws of U.S.; (8) mark is functional; and (9) equitable principles, including laches, estoppel and acquiescence are applicable. A mark becomes incontestable through five years' continuous use following federal registration and compliance with statutory formalities. 15 U.S.C. § 1065.

13

prior to 1991. However, "[u]nless there is evidence to the contrary, a trade name will be presumed to have passed, even in the absence of formal assignment, to one whom the business has been transferred." *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 670 F. Supp. 795, 798 (N.D. Ill. 1987) (citations omitted) (granting a motion to dismiss where the plaintiffs failed to make a claim in a trade name for a ten year period). In this case, James Gaffrig formed Gaffrig Precision Instruments in 1984. In 1991, Mr. Gaffrig formed Gaffrig Performance Industries and by the end of the year, Gaffrig Precision Instruments had ceased to exist. Michael Schultz, Gaffrig Performance Industries current owner, testified that while he did not know whether the assets of Gaffrig Precision Instruments were sold to Gaffrig Performance Industries, he did know that Plaintiff acquired Gaffrig Precision Instruments in some fashion. This Court finds Mr. Schultz's belief regarding the transfer of the assets to be not only believable, but also logical. A reasonable factfinder could conclude that the purpose behind creating a second entity so close to the dissolution of the first was to protect and transfer rights in Gaffrig Precision Instruments. Because a trade name can pass without formal assignment, a genuine issue of fact exists as to whether Plaintiff may claim priority in mark based on Gaffrig Precision Instruments use of the mark.

Next, Livorsi claims that even if Plaintiff can establish a priority in the "Gaffrig" marks, it cannot tack on its use of the "Gaffrig" marks with Gaffrig Precision Instruments. Livorsi claims that Gaffrig Precision Instruments and Gaffrig Performance Industries do not create the same commercial impression and therefore, tacking cannot be justified. Plaintiff responds by arguing that it can in fact tack on the "Gaffrig" marks because the surname, Gaffrig, makes the mark distinctive. Plaintiff claims that the "Gaffrig" marks give consumers the same overall impression such that the marks are legally identical.

14

An assignee of a trademark can tack on the period during which the assignor used the mark, *PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285 (8th Cir.1969), but only when the mark is assigned in conjunction with the sale of the goodwill of the business to which it is attached, pursuant to Section 10 of the Lanham Act. 15 U.S.C. § 1060 (1982). *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 367 (6th Cir. 1985). Although an alleged infringer need not acquire the assets of another company in order to "tack on" a period of use, some formal transfer of the technology and goodwill of the accused product is required. *Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*, 44 F. Supp.2d 1149, 1156 (D. Kan. 1999); *R2 Medical Systems, Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1412 (N.D. Ill. 1996). Livorsi argues that Plaintiff should not be allowed to tack on use of "Gaffrig Precision Instruments" to its earlier use of "Gaffrig Performance Industries." However, courts have held that in order to tack on a newer mark to an older one, the user must show that the newer mark is the "legal equivalent" of the old one. *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991). Determining whether a later mark is the "legal equivalent" of an earlier mark is a question of law. *Id.* Showing that two marks may be confusingly similar, is not sufficient to allow the user to tack the use of one on to the use of the other. *Id.* As this Court has previously determined, a genuine issue of material fact exists as to whether a formal transfer of Gaffrig Precision Instruments' technology and goodwill to Gaffrig Performance Industries took place. Therefore, summary judgment on the tacking issue is **DENIED**.

2. A genuine issue of fact exists as to Livorsi's inaccurate statements in its application

Plaintiff's first claim is that Livorsi made knowingly inaccurate statements in its trademark application regarding its "first use" of the "Gaffrig" marks in commerce. Plaintiff asserts that Livorsi committed fraud in its application because Livorsi claims to have used the

15

"Gaffrig" marks in 1984, when in fact, it was Gaffrig Precision Instruments that began using the marks in 1984. Furthermore, Plaintiff claims that Livorsi's application stated that its use of the "Gaffrig" mark would not lead to confusion in the marketplace, which was in itself, misleading. Finally, Plaintiff alleges that it has been damaged as a result of Livorsi's misleading and inaccurate trademark application.

Because evidence of fraud in the application of a trademark is grounds for cancellation, a relevant inquiry before this Court is whether, in light of the fact that Gaffrig is a personal surname, Livorsi demonstrated evidence of a secondary meaning in order to gain protection for the mark. Both surnames and first names are regarded as descriptive terms and, therefore, one who claims federal trademark rights in a name must prove that the name has acquired a secondary meaning. *Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648-49 (2d Cir. 1988). Secondary meaning is defined as "the consuming public's understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but the particular business that the mark is meant to identify." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990). "In the case of a trade name, secondary meaning is '[t]he power of a name ... to symbolize a particular business." *Id.* (quoting *Ideal Toy Corp. v. Kenner Products Div'n of Gen. Mills Fun Group, Inc.*, 443 F. Supp. 291, 305 n.14 (S.D.N.Y. 1997)). "If a trade name has not acquired secondary meaning, the purchaser will not make an association with a particular producer and thus will not be misled by an identical or similar mark." *Id.* (citing *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 216 (2d Cir. 1985)).

"The issue of whether a mark has become distinctive as representing a particular company's goods is a question of fact." *Boden Prods., Inc. v. Doric Foods Corp.*, 552 F. Supp. 493, 498 (N.D. Ill. 1982) (citing *Union Carbide Corp. . Ever-Ready Inc.*, 531 F.2d 366, 380-81

(7th Cir. 1976). Proof of secondary meaning entails a rigorous evidentiary standard. "The burden of proving secondary meaning is on the party asserting it, whether he is the plaintiff in an infringement action or the applicant for federal trademark registration." *Yamaha Int'l. Corp. v. Hoshino Gakki Co., Ltd.*, 840 F.2d 1572, 1578-79 (Fed. Cir. 1988). Moreover, a certificate of registration constitutes prima facie evidence of the validity of the registered mark and relieves the holder of the burden of proving secondary meaning. 15 U.S.C. §§ 1057(b), 1115(a). Therefore, the burden of proof rests with Plaintiff to prove that it is entitled to common law trademark protection.

In this case, Livorsi filed its trademark application in 1992. Later that year the Patent and Trademark Office sent Livorsi a letter of office action specifically requesting information as to whether the term "Gaffrig" "has any significance in the relevant trade, any geographical significance or any meaning in a foreign language." (Def.'s Ex. L at LMI000321.) In a letter dated June 24, 1992, Livorsi responded that "[t]he name 'Gaffrig' has no significance in the relevant trade other than to identify one of applicant's lines of Marine instruments ...." (Def.'s Ex. L at LMI000323.) It is obvious that the Patent and Trademark Office was making an inquiry into whether the "Gaffrig" mark had achieved a secondary meaning. If Livorsi knew that Mr. Gaffrig was still using his surname in 1992, the time of the trademark application, then Livorsi's response to the Patent and Trademark Office was at best vague and more accurately misleading and deceptive. Therefore, a genuine issue of material fact exists as to whether Livorsi was aware of the fact that the "Gaffrig" mark had significance in the trade other than to identify Livorsi's line of marine instruments.

As has been stated, Livorsi's challenges of priority in use and tacking on are questionable while Plaintiff's claims of fraud survive. Given the fact that many genuine issues of material

fact exist in reference to Livorsi's incontestable trademark and Plaintiff's ability to cancel it, summary judgment on the matter must be **DENIED.**

## CONCLUSION

As stated above, the Supreme Court has said that the facts which are considered material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. Here, a federal trademark registration, even one that has grown to incontestability, can be vitiated with proof of fraud; and thus fraud is a controlling issue. 15 U.S.C. § 1115. Therefore, Defendant's burden to prove there is no genuine issue of material fact pertains to not only the *prima facie* case for its causes of action, but also to the affirmative defense of fraud in the application for trademark registration. After construing the facts and drawing all reasonable inferences in the light most favorable to the nonmoving party, Defendant has not met its initial burden to prove that no genuine issue of material fact exists. *A fortiori*, even if Defendant had met its burden, Plaintiff has designated specific facts showing that a genuine material issue exists in the allegations of fraud.

For all these reasons, Defendant's Motion for Summary Judgment (doc. # 15) is **DENIED.**

**IT IS SO ORDERED.**
**DATED:** June 22, 2001

_____
**WILLIAM J. HIBBLER, DISTRICT JUDGE**